IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-322-FL

GLORIA WILSON, PHYLLIS RODGERS,       )
EVELYN POWELL, and ELAINE HUNT,       )
                                      )
                 Plaintiffs,[1]       )
                                      )
           v.                         )
                                      )
NASH    EDGECOMBE    ECONOMIC         )
DEVELOPMENT,      INC.;    ELTON      )          ORDER
POWELL, Head Start Director; GINELL   )
ROGERS,  Executive  Director; NASH    )
EDGECOMBE          ECONOMIC           )
DEVELOPMENT,   INC.   BOARD   OF      )
DIRECTORS, January 1, 2017 – June 27, )
2019; and JAMES COLLINS, Chairman,    )
                                      )
                 Defendants.          )

This matter is before the court on defendants' motion to dismiss pursuant to Federal Rules

of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (DE 40). Also pending is plaintiffs' second

motion to amend complaint. (DE 45). The issues raised have been briefed fully, and in this

posture, are ripe for ruling. For the following reasons, defendants' motion to dismiss is granted in

part and denied in part, and plaintiffs' second motion to amend is granted in part and denied in

part. Where the parties' scheduling conference activities have been delayed pending resolution of

this and prior pleading challenges mounted by defendants, the court's order also initiates these

activities, as described more particularly below.

---

[1]    The court constructively amends its case caption to reflect addition of plaintiff Elaine Hunt, who joined this
action through plaintiffs' amended complaint, filed January 15, 2020.

## STATEMENT OF THE CASE

Plaintiffs Gloria Wilson ("Wilson"), Phyllis Rodgers ("Rodgers"), and Evelyn Powell ("Powell") commenced this employment discrimination action in Superior Court of Nash County, North Carolina, on June 27, 2019, asserting claims under the Age Discrimination and Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621 et seq.; Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq.; the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.; as well as state law claims for wrongful discharge in violation of the North Carolina Equal Employment Practices Act ("NCEEPA"); negligent hiring, retention, and supervision; libel and slander; and intentional infliction of emotional distress. Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, costs, and attorneys' fees.

Defendants removed the case to this court on July 30, 2019, and moved to dismiss on August 27, 2019. Thereafter, plaintiffs filed amended complaint with leave of court, joining Elaine Hunt ("Hunt") as a plaintiff. After the court ruled that plaintiffs' amended complaint rendered defendants' first motion to dismiss moot, defendants filed the instant motion to dismiss plaintiffs' amended complaint January 29, 2020, seeking dismissal for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. In support of the motion, defendants rely upon 1) May 1, 2017, article in the Rocky Mount Telegram and 2) excerpt of defendant Nash Edgecombe Economic Development, Inc.'s ("NEED") conflict of interest personnel policy.[2] Plaintiffs responded in opposition, and defendants replied.

---

[2] Although plaintiffs did not attach these documents to their amended complaint, they selectively quoted each document, and those portions were "integral to and explicitly relied on in the complaint"; moreover, "plaintiffs do not challenge [the documents'] authenticity", so the court may properly consider them in ruling on defendants' motion to dismiss. Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999); see Cozzarelli v. Inspire Pharmaceuticals, Inc.,

2

On July 31, 2020, plaintiffs filed the instant motion for leave to file second amended complaint, seeking to join Dr. Shiquita Blue ("Dr. Blue") as a party plaintiff and assert additional claims on behalf of plaintiff Powell. Specifically, Dr. Blue seeks to assert ADEA; gender discrimination; hostile work environment; retaliation; negligent hiring, retention, and supervision; and NCEEPA claims. Plaintiff Powell seeks to assert retaliation and NCEEPA claims and to allege additional facts in support of her ADEA; gender discrimination; hostile work environment; negligent hiring, retention, and supervision; and intentional infliction of emotional distress claims. On, August 21, 2020, defendants responded, opposing amendment due to plaintiffs' failure to file a memorandum in support of motion to amend, among other reasons. On August 23, 2020, plaintiffs filed a memorandum in support of their motion.

## STATEMENT OF FACTS

The facts alleged in plaintiffs' first amended complaint may be summarized as follows. Defendant NEED is a non-profit organization that provides grants and services to low-income and moderate-income families residing in Nash, Edgecombe, and Wilson counties. (Am. Compl. (DE 37) ¶¶ 4,7). Defendant NEED employed plaintiffs as follows: plaintiff Wilson served as Family Development Division Director and was a member of the management team, plaintiff Rodgers served as an administrative assistant, plaintiff Hunt served as a Family Services Health Advocate, and plaintiff Powell served as the Education Manager. (Id. ¶¶ 5, 51). In addition, defendant Ginnell Rogers ("Rogers") served as defendant NEED's Executive Director, defendant James Collins ("Collins") served as chairman of defendant NEED's board of directors, and defendant Dr. Elton Powell ("Dr. Powell") served as Head Start Director. (Id. ¶ 13).

---

549 F.3d 618, 625 (considering investment analyst reports attached to the defendants' motion to dismiss because the complaint selectively quoted from those reports and the plaintiffs did not challenge the reports' authenticity).

3

A.      Defendant Rogers

According to plaintiffs, defendant Rogers was not the top candidate for the Executive Director position.  (Id. ¶ 399).   She did not have supervisory experience, and she had not managed a budget comparable to defendant NEED's budget.  (Id. ¶ 400). Nevertheless, defendant NEED hired defendant Rogers to serve as the Executive Director in 2017.  (Id. ¶ 397).

Prior to her employment with defendant NEED, defendant Rogers worked in the North Carolina Department of Health and Human Services Division of Economic Opportunity, where she monitored community block grants for several agencies, including defendant NEED.  (Id. ¶ 56).  In light of this experience, plaintiffs allege defendant Rogers was familiar with defendant NEED's staff demographics, and formed the intent to discriminate against defendant NEED's older employees before she became its Executive Director.  (Id. ¶ 57).

Soon after defendant NEED hired defendant Rogers as Executive Director in 2017, a staff writer for The Rocky Mount Telegram, interviewed defendant Rogers.  (Id. ¶ 47).  Plaintiffs allege defendant Rogers stated in the interview that "NEED has never had an Executive Director as young as [her], and that her goal is to eventually have a more younger presence in NEED."  (Id. ¶ 48). Plaintiffs also allege that defendant Rogers stated "a lot of employees are older, and [she does not] see a lot of the younger generation within management [at defendant NEED].  (Id.).  Finally, plaintiffs allege defendant Rogers "stated that it is harder for the older generation to adapt and change."  (Id.).

Plaintiffs also allege defendant Rogers "provide[d] preferential treatment to the male employees."  (Id. ¶ 345).   In particular, defendant Rogers suspended without pay two female employees, Joyce Lloyd and Sandra Lancaster, when their letters of qualification expired; yet, she allowed two male employees, Joseph Macklin and Howie Stephens, to continue working after their

4

letters of qualification expired, and she allowed defendant Dr. Powell to begin working at defendant NEED before he obtained a letter of qualification. (Id. ¶¶ 341-343). Moreover, defendant Rogers denied Rosilyn Kee's request for vacation leave, but she approved Reggie Chambers's ("Chambers") request for vacation, even though both requests were submitted around the same time period. (Id. ¶ 344).

B.    Plaintiff Wilson's Salary

On January 24, 2018, defendant Rogers met with plaintiff Wilson and her staff, and she stated that plaintiff Wilson's salary could be decreased to balance the budget. (Id. ¶ 87). Plaintiff Wilson viewed this statement as a threat, and it created an alleged hostile work environment. (Id. ¶ 88). Then, on February 9, 2018, while plaintiff Wilson was on bereavement leave due to the death of her brother, defendant Rogers recommended that plaintiff Wilson's salary be decreased by $6,000.00, and senior staff member Kathy Finch's salary be decreased by $4,000.00, to balance the budget. (Id. ¶¶ 52, 74). Defendant Rogers allegedly planned to decrease Finch's and plaintiff Wilson's salaries in order to increase two younger staff members' salaries by $3,000.00 dollars each. (Id. ¶ 53). However, defendant Board of Directors did not reduce plaintiff Wilson's salary. (Id. ¶ 78).

Thereafter, defendant Rogers allegedly created a hostile work environment by making numerous unattainable work demands. (Id. ¶ 79). For example, on March 26, 2018, defendant Rogers emailed plaintiff Wilson at 4:00 p.m., demanding that plaintiff Wilson meet with her staff and prepare a report by 5:00 p.m., even though plaintiff Wilson was scheduled to leave for vacation the next day. (Id. ¶ 80). Plaintiff Wilson and her staff worked until 8:00 p.m. to complete the report. (Id. ¶ 81). Defendant Rogers allegedly did not use the report, and she told the staff she did not know why plaintiff Wilson required them to work late. (Id. ¶¶ 81-82). Moreover, on several

5

occasions, defendant Rogers allegedly tried to solicit negative comments from plaintiff Wilson's staff regarding plaintiff Wilson's job performance. (Id. ¶ 84). Although defendant Rogers's efforts were unsuccessful, they affected the staff's moral and allegedly created a hostile work environment for plaintiff Wilson. (Id.).

C.    Termination of Plaintiffs Wilson and Rodgers

During the 24 years the plaintiff Wilson worked for defendant NEED, she did not receive a negative performance evaluation until defendant Rogers conducted plaintiff Wilson's annual review, after observing plaintiff Wilson's performance for only four months. (Id. ¶¶ 20-21). Prior to this negative review, defendant Rogers did not provide plaintiff Wilson with any feedback on aspects of her performance that needed improvement. (Id. ¶ 22). On April 18, 2018, defendant Rogers terminated plaintiffs Wilson and Rodgers from their positions at defendant NEED. (Id. ¶¶ 23, 100). On the date of their termination, plaintiff Rodgers was 46 years old and plaintiff Wilson was 63 years old. (Id. ¶¶ 50, 128). According to discharge letters sent by defendant Rogers, the sole reason for their termination was an alleged conflict of interest with vendor Motivator Enterprise, LLC.[3] (Id. ¶¶ 32, 107).

According to plaintiffs, defendant NEED's conflict of interest policy requires "[a]ny member of the Board of Directors or other policy-making body or employee having any interest shall promptly make such interest known at each meeting or in writing, to the Chairperson of the Board of Directors." (Id. ¶ 33). Plaintiff Wilson has never had any ownership interest in Motivator Enterprises, LLC, nor she did benefit directly or indirectly from the transactions with Motivator Enterprises, LLC. (Id. ¶¶ 34, 35). Plaintiff Rodgers acknowledges that she has an ownership

---

[3]    Plaintiff Rodgers also alleges that defendant Rogers informed her on or about April 18, 2020, that her position was eliminated due to lack of funding.

6

interest in Motivator Enterprises, LLC, as she is married to its operator, Milo Rodgers, but alleges that she disclosed this interest when she applied for the position, since it is prominently displayed on her resume. (Id. ¶¶ 108-109). In addition, plaintiff Rodgers alleges that Chambers, as well as defendants Collins and Rogers, knew that plaintiff Rodgers was married to the operator of Motivator Enterprises, LLC. (Id. ¶ 109).

The transactions at issue between defendant NEED and Motivator Enterprises, LLC, consist of two requests for Motivator Enterprises, LLC's services, for $500.00 each, and one request for Motivator Enterprises, LLC's services, for $1,500.00. (Id. ¶ 38). Plaintiff Wilson submitted all three invoice requests to defendant Rogers, as required by defendant NEED's policy, and defendant Rogers approved them all, despite having direct knowledge that plaintiff Rogers was married to the operator of Motivator Enterprises, LLC. (Id. ¶¶ 38-39). Defendant Rogers initially refused to execute the check for the $1,500.00 invoice; however, on June 11, 2018, she paid Motivator Enterprises, LLC in full. (Id. ¶¶ 41-42).

Plaintiffs Wilson and Rodgers appealed their termination to defendant Board of Directors, which held an appeals hearing on June 19, 2018. (Id. ¶¶ 25-27; 101-103). During the appeals hearing, attorney for plaintiffs Wilson and Rodgers was allowed 10 minutes to present information on their behalf. (Id. ¶¶ 27, 103). In letters dated June 25, 2018, defendant Collins informed plaintiffs Wilson and Rodgers that defendant Board of Directors upheld defendant Rogers's decision to terminate them. (Id. ¶¶ 29, 105). After being discharged, plaintiff Wilson experienced chest pains and received medical treatment several times at Nash General Hospital. (Id. ¶ 96). On March 4, 2019, she was diagnosed with situational mixed anxiety and depressive disorder and was prescribed Fluoxetine. (Id. ¶ 97).

7

Plaintiffs Wilson and Rodgers allege that their termination was merely a "pretext to age and gender discrimination." (Id. ¶¶ 45, 121). Moreover, they note that Chambers, defendant NEED's job placement specialist, was responsible for procuring two services from vendor Motivator Enterprises, LLC, and submitting responses for services to plaintiff Wilson; yet, he was not cited for a conflict of interest violation or terminated from defendant NEED. (Id. ¶¶ 36-37, 132). In addition, defendant Dr. Powell allegedly had plans to open a competing private school with his wife. (Id. ¶¶ 41). Although defendants Rogers and Board of Directors were aware of defendant Dr. Powell's intent to open the private school, they did not discharge defendant Dr. Powell, nor did they cite him for a conflict of interest violation. (Id. ¶¶ 141-143).

D.      Plaintiff Powell's Grievances

During the four years that plaintiff Powell worked for defendant NEED, she was an outstanding employee and has never received a negative employment evaluation. (Id. ¶¶ 156, 158). Indeed, when plaintiff Powell started working for defendant NEED, the educational centers were about to lose accreditation; however, under her leadership, all of the educational centers obtained five-star status. (Id. ¶ 157).

In early 2018, plaintiff Powell requested permission from defendants Rogers and Dr. Powell to attend a training event in Greensboro, North Carolina. (Id. ¶ 246). After several months elapsed without a response, plaintiff Powell resubmitted her request on April 29, 2018. (Id.). Defendants Rogers and Dr. Powell did not respond to plaintiff Powell's second inquiry; nevertheless, plaintiff Powell and her staff traveled to Greensboro to attend the training. (Id. ¶ 248).

At the training event, plaintiff Powell was informed that defendant Rogers would contact her by the end of the business day, that she was to return to work the next morning, and that her

8

two peers could attend the remainder of the training event. (Id. ¶ 250). When defendant Rogers did not contact plaintiff Powell as promised, plaintiff Powell drove home from Greensboro at the end of the day. (Id. ¶ 251). At approximately 10:00 p.m., plaintiff Powell called defendant Dr. Powell, who advised that defendant Rogers had changed her mind and that plaintiff Powell was allowed to attend the training. (Id. ¶ 252). Accordingly, plaintiff Powell drove back to Greensboro the next morning to attend the conference. (Id. ¶ 253).

After observing plaintiff Powell's performance for only one month, defendant Dr. Powell verbally suspended plaintiff Powell without pay for approximately six months on May 21, 2018, to investigate the pinching of a student by a teacher at an education center. (Id. ¶¶ 159, 165). On the date of her suspension, plaintiff Powell was 60 years old. (Id. ¶ 220). Although plaintiff Powell was not at the center when the alleged incident occurred, Valarie Arrington ("Arrington") the center's director, was onsite; yet, Arrington was suspended for less time than plaintiff Powell, and she received a promotion to a larger center. (Id. ¶¶ 160-166).[4]

In letter dated July 23, 2018, defendant Rogers informed plaintiff Powell that the investigation did not reveal any misconduct by plaintiff Powell, but that an independent Head Start consultant found that plaintiff Powell failed to properly train staff as it relates to child abuse and neglect; therefore, she was being demoted to Teacher's Assistant. (Id. ¶¶ 168-171). According to plaintiff Powell, defendant Dr. Powell did not mention that the adequacy of her training and instruction would be investigated when he verbally suspended her on May 21, 2018. (Id. ¶ 170).

---

[4]     On June 8, 2018, defendant Dr. Powell directed plaintiff Powell to attend a meeting to discuss her verbal suspension without pay. (Id. ¶ 261). Defendant Dr. Powell, members of defendant NEED's staff, a private consultant, and defendant Collins attended the meeting. (Id. ¶ 262). During the meeting defendant Dr. Powell allegedly terminated plaintiff Powell. (Id. ¶ 263). Although defendant Rogers did not uphold the termination, plaintiff Powell alleges it was the most embarrassing and professionally devastating experience in her life. (Id. ¶¶ 265, 268).

9

Plaintiff Powell appealed her verbal suspension without pay, and defendant Board of Directors referred the appeal to the Personnel and Executive Committees ("PEC"). (Id. ¶¶ 178, 180). At hearing, defendant Dr. Powell presented allegations against plaintiff Powell to the PEC. (Id. ¶ 181). In addition to the alleged pinching incident, and plaintiff Powell's alleged failure to train staff on issues such as child abuse and neglect, defendant Dr. Powell presented 11 allegations against plaintiff Powell, dating back to October 2017. (Id. ¶ 181). Among the allegations, defendants Rogers and Dr. Powell accused plaintiff Powell of creating fake CPR Certification cards for herself and others. (Id. ¶ 188). Defendants Rogers and Dr. Powell allegedly found these sample CPR Certification cards when they entered plaintiff Powell's office and searched her bags while plaintiff Powell was on verbal suspension. (Id. ¶ 189). When confronted about the cards, plaintiff Powell explained to defendants Rogers and Dr. Powell that the sample CPR Certification cards were used as props during a seminar that she conducted for her sorority in March 2017. (Id. ¶ 191). Despite this explanation, defendants Rogers and Dr. Powell presented the allegation to the PEC and allegedly continued to accuse plaintiff Powell of fraud. (Id. ¶ 193).

At the conclusion of the presentations, the PEC found "that there was a lack of written documentation verifying violations by Plaintiff Evelyn Powell to willfully neglect her job duties." (Id. ¶ 184). Moreover, the PEC found that defendants Dr. Powell and Rogers failed to follow defendant NEED's personnel policy and procedure guidelines for disciplinary correction action of an employee. (Id. ¶ 185). Regarding the CPR Certification card allegation, the PEC ruled that plaintiff Powell did not possess the requisite willful intent to change defendant NEED's files for personal gain or to tarnish the agency's image or reputation. (Id. ¶ 194). Accordingly, the PEC recommended that plaintiff Powell be reinstated to her previous Education Manager position or a

similar position with a commensurate salary, and defendant Board of Directors voted to affirm PEC's findings. (Id. ¶¶ 195).

However, defendants Rogers and Dr. Powell did not reinstate plaintiff Powell; instead, they sought a second opinion from the Policy Council. (Id. ¶¶ 197-198). The Policy Council voted to uphold the suspension without pay and demotion, creating an impasse with defendant Board of Directors. (Id. ¶¶ 201-202). A mediator, selected by defendant Rogers, ruled that defendants Rogers and Dr. Powell violated several policies when they suspended and demoted plaintiff Powell, and it recommended that plaintiff Powell be reinstated as the Education Manager. (Id. ¶ 206). However, defendant Rogers did not reinstate plaintiff Powell until 20 days later. (Id. ¶ 278). Plaintiff Powell experienced emotional distress as a result of this financial hardship, and after being suspended for six months without pay, plaintiff Powell was treated by a physician for depression and anxiety. (Id. ¶¶ 215, 321).

Upon plaintiff Powell's return to work on November 5, 2018, defendant Rogers informed her that "there may be a very cold atmosphere at NEED and you should be aware that some of the employees are needing to adjust to you returning back to work." (Id. ¶ 283). According to plaintiff Powell, that was a warning that she was returning to a hostile work environment. (Id. ¶ 284). Also, defendants Rogers and Dr. Powell advised plaintiff Powell and staff that "all feedback will be given to the lead teachers and center directors and there is to be no collaboration between Mrs. Powell and the teachers." (Id. ¶ 280). According to plaintiff Powell, this directive was issued to create a hostile work environment and retaliate against plaintiff Powell for prevailing against their attempts to demote and discharge her. (Id. ¶ 281). Moreover, this directive is in conflict with the revised job description given to plaintiff Powell when she returned to work, which requires

plaintiff Powell to train, develop, and act as a substitute teacher in the lead teacher's absence. (Id. ¶ 282).

Defendant Rogers established a mentoring group with lead teachers and center directors, designating herself as a leader. (Id. ¶ 313). The members of the mentoring group were not allowed to share any of the information discussed in their meetings; however, the members of the mentoring group were unsure as to what information qualified as confidential. (Id. ¶ 314). According to plaintiff Powell, this rule created a hostile work environment. (Id. ¶ 316).[5]

When plaintiff Powell returned to work on November 5, 2018, she was assigned a smaller office in a different location. (Id. ¶ 296). The janitor directed her to the closet where her belongings were stored during her suspension, and she found her refrigerator full of molded food, rodents, and maggots. (Id. ¶ 300). The maintenance staff offered to help plaintiff Powell move her desk and bookshelves to her new office; however, defendant Dr. Powell ordered the maintenance to avoid conversation with plaintiff Powell. (Id. ¶¶ 302-305). Yet, prior to her suspension, it was normal practice for the maintenance staff to meet with plaintiff Powell each day. (Id. ¶ 306).

E.    Plaintiff Hunt's Termination

Plaintiff Hunt is a veteran with advanced degrees, who worked for defendant NEED for four years without receiving an unsatisfactory performance evaluation. (Id. ¶ 322). On June 20,

---

[5]    Plaintiff Powell was instructed to not communicate with the lead teachers and center supervisors on her morning call to see if there were absences or problems, as she had done prior to her suspension. Instead, the lead teachers and center supervisors were to call Dr. Blue, who would relay messages to plaintiff Powell if she believed it was necessary. (Id. ¶ 318). However, according to plaintiff Powell, Dr. Blue is the Family Engagement Partnership Manager, and she has no responsibility regarding the day to day operations of Head Start and the classroom. (Id. ¶ 319). Plaintiff Powell alleges these requirements were implemented to ensure that she failed and to give defendant Rogers and Dr. Powell an excuse to discharge her from employment. (Id. ¶ 320).

2018, plaintiff Hunt took approved FMLA leave, which was set to continue until September 21, 2018. (Id. ¶ 323). On August 31, 2018, a co-worker allegedly told plaintiff Hunt that she was being demoted upon her return from leave. (Id. ¶ 324). On September 3, 2018, plaintiff Hunt asked why she was being demoted, and defendant Dr. Powell indicated that "the other Family Service Health staff had worked hard this summer while she was out of work on FMLA leave and her new position is a teacher's assistant." (Id. ¶ 326). According to plaintiff Hunt, she was never given written notice citing the reason for her alleged demotion, in violation of Article III, Section 14 of defendant Need's personnel policy. (Id. ¶ 327).

In letter September 19, 2018, two days before plaintiff Hunt was scheduled to return to work, plaintiff Hunt submitted a letter from her medical doctor, Dr. Nancy L. Vogel ("Dr. Vogel"), stating that plaintiff Hunt was under her care for a medical condition that requires her to remain off work for six months. (Id. ¶ 331). On September 21, 2018, defendant Rogers aggressively pressured plaintiff Hunt to disclose her medical condition, but defendant Rogers refused. (Id. ¶ 347). When plaintiff did not receive any correspondence from defendant Rogers after September 21, 2018, plaintiff Hunt believed that her request for additional leave had been approved. (Id. ¶ 334).

On October 17, 2018, defendant NEED received an employment reference request from the Edgecombe County Department of Social Services regarding plaintiff Hunt. (Id. ¶ 335). In response, defendant Rogers submitted a negative employment reference, even though defendant Rogers did not directly supervise her. (Id. ¶ 348). Dr. Blue, plaintiff Hunt's supervisor, should have completed the employment reference. (Id. ¶ 349).

In letter dated October 29, 2018, defendant Rogers advised plaintiff Hunt that she was terminated immediately for not disclosing the medical condition associated with her request for

13

FMLA leave and for seeking employment with another agency. (Id. ¶ 333). Plaintiff Hunt alleges her termination is "a pretext to retaliating against Plaintiff Hunt for taking FMLA leave and sex discrimination." (Id. ¶ 339).

Additional facts pertinent to the instant motions will be discussed below.

## COURT'S DISCUSSION

A.     Motion to Dismiss

1.     Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, " [the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider " legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

2.     Analysis

a.     Title VII, ADEA, and NCEEPA Claims Against Individual Defendants

Defendants Rogers, Dr. Powell, Collins, and Board of Directors argue that they are not subject to liability under Title VII, ADEA, or NCEEPA, because they are not plaintiffs' employers. The court agrees.

14

ADEA and Title VII each make it unlawful for an "employer" to engage in certain discriminatory conduct. See 29 U.S.C. § 623; 42 U.S.C. § 2000e-2. "Employer" is defined in ADEA in pertinent part as "a person engaged in an industry affecting commerce who has twenty or more employees . . ." 29 U.S.C. § 630(b). A similar definition is used by Title VII, but with a lower threshold of fifteen employees. See 42 U.S.C. § 2000e(b). Based on these definitions, the Fourth Circuit has explicitly rejected individual liability under either statute. See Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998) (Title VII); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir. 1994) (ADEA).

Under this reasoning, courts in the Fourth Circuit have also held that a board of directors cannot be liable under Title VII or the ADEA. See Johnson v. Quin Rivers Agency for Cmty. Action, Inc., 128 F. Supp. 2d 332, 335 (E.D. Va. 2001); Pearsall v. Child Advoc. Comm'n of Lower Cape Fear, Inc., No. 7:98CV200-BR, 2000 WL 33682693, at *5 (E.D.N.C. Feb. 15, 2000). Here, defendant NEED is plaintiffs' employer, and thus, the only defendant subject to liability under Title VII or the ADEA. Accordingly, plaintiffs' Title VII and ADEA claims against defendants Collins, Rogers, Dr. Powell, and Board of Directors are dismissed with prejudice.[6]

In interpreting the NCEEPA, North Carolina courts are guided by federal case law developed pursuant to Title VII. See N.C. Dept. of Corr. v. Gibson, 308 N.C. 131, 136 (1983). Accordingly, in North Carolina, individual employees and supervisors are not amenable to suit at common law for wrongful discharge in violation of public policy. See Cox v. Indian Head Indus., 187 F.R.D. 531, 535 (W.D.N.C. 1999); Chung v. BNR, Inc./N. Telecom, Inc., 16 F. Supp. 2d 632,

---

[6]     Plaintiffs argue that these individual defendants are subject to liability under Title VII and ADEA because they allegedly committed acts outside of the scope of their official duties and employment. However, such allegations are immaterial to this inquiry, where they do not render the individual defendants "employers" for purposes of Title VII or ADEA.

15

634 (E.D.N.C. 1997). This reasoning is applicable to members of a board of directors as well. Accordingly, plaintiffs' NCEEPA claims against defendants Rogers, Dr. Powell, Collins, and Board of Directors are dismissed with prejudice.[7]

        b.     ADEA Claims

Defendants move to dismiss ADEA claims asserted by plaintiffs Wilson, Powell, and Rodgers for failure to state a claim upon which relief can be granted.

Plaintiffs Wilson and Rodgers allege they were terminated because of their age, and plaintiff Powell alleges she was suspended because of her age, in violation of the ADEA. The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).

To state a claim under the ADEA, plaintiffs must allege plausible facts to satisfy the elements of a cause of action created by that statute, that is, that defendant NEED "discharge[d] [them] or otherwise discriminate[d]" against them "because of [their] age." 29 U.S.C. § 623(a) (emphasis added); McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 586 (4th Cir. 2015). The elements of a prima facie claim under the ADEA are: "(1) at the time of her firing, she was at least 40 years of age; (2) she was qualified for the job and performing in accordance with her employer's legitimate expectations; (3) her employer nonetheless discharged her; and (4) a substantially younger individual with comparable

---

[7]     The court declines to address the parties' arguments regarding whether plaintiffs can assert their other claims against defendant Board of Directors, where those claims, except plaintiff Powell's defamation claim, do not survive motion to dismiss, as set forth in more detail herein, and plaintiff Powell's defamation claim is brought against defendant NEED only. (See Am Compl. (DE 37) ¶¶ 414-421).

qualifications replaced her." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019).

                         i.      Plaintiff Wilson

Here, plaintiff Wilson has alleged sufficient facts to give rise to a reasonable inference of each element of the prima facie case, as well as intentional discrimination.

First, plaintiff Wilson was 63 at the time of her adverse employment action. (Id. ¶¶ 126, 128). Second, she alleges that she had been an exemplary employee for 24 years and never received a negative employment evaluation until defendant Rogers joined defendant NEED. (Id. ¶ 20). Third, she was terminated. Fourth, it may be inferred from the allegations that a substantially younger individual replaced her. (Id. ¶ 49).

Finally, plaintiffs Wilson alleges that the purported reason for her termination, violation of defendant NEED's conflict of interest policy, was a pretext for intentional age discrimination because lesser sanctions were available. In particular, plaintiff Wilson alleges that defendant NEED's personnel policy required defendant Rogers to issue a written reprimand, rather than terminate her, since it was her first alleged offense. (Am. Compl. (DE 37) ¶¶ 43, 44). In this manner, plaintiff Wilson has alleged facts permitting an inference that her termination was "such an extreme overreaction as to be pretextual." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 723 (4th Cir. 2019) (finding pretext where, the defendant's "sole justification for its action was [plaintiff's] backdating of a form in violation of company policy," and where "the offense was isolated, lesser sanctions were available, and company officials had advised her that the offense was not serious and she had nothing to worry about").

Defendants attempt to distinguish the instant matter from Westmoreland by noting that, in Westmoreland, the plaintiff's supervisor told her to "just go home and take care of those

grandbabies" upon firing her. 924 F.3d at 724. Although statements evincing such age-based animus are absent from the allegations here, this absence is not fatal to plaintiff Wilson's claim, where she plausibly states a prima facie claim and alleges additional facts permitting an inference of pretext. Accordingly, defendants' motion to dismiss is denied in this part.[8]

  ii.  Plaintiffs Rodgers and Powell

  Plaintiffs Rodgers and Powell fail to state ADEA claims, where they fail to plausibly allege certain requisite elements. In particular, plaintiff Rodgers fails to allege any facts regarding her job performance, precluding the inference that she was qualified for her position or was otherwise meeting her employer's legitimate expectations. Moreover, plaintiff Powell fails to allege different treatment of similarly situated employees outside the protected class. Although plaintiff Powell alleges that she was suspended for a longer period of time than Arrington, she does not allege Arrington's age, preventing a determination as to whether Arrington is outside of the protected class. Accordingly, plaintiffs Rodgers and Powell fail to state ADEA claims.[9]

  Nevertheless, plaintiffs argue that defendant Rogers's statements, memorialized in article published March 1, 2017, evince discriminatory intent. As pertinent here, the article quotes

---

[8] Although not necessary for the court's decision on the instant motion, the court notes that plaintiff's proposed second amended complaint alleges specifically that plaintiff Wilson was replaced by a 33 year old, and that from 2018 to 2020, defendant Rogers terminated six employees ages 46 to 63, and hired 13 employees between the ages of 23 to 38. (Prop. 2d. Am. Compl. (DE 45-1) ¶¶ 373-376). As set forth further below, the court grants plaintiffs' motion to amend in this part, allowing plaintiffs to plead the ages of employees hired by defendant Rogers.

[9] Where plaintiff Powell fails to plausibly allege a prima facie case, plaintiff Powell's arguments regarding pretext are unavailing. See King v. Rumsfeld, 328 F.3d 145, 150 (4th Cir. 2003) ("These allegations, as King recognizes, go to the issue of whether appellee's explanation of King's discharge is pretextual. But, since King never established a prima facie case as to his discrimination claims, appellee is under no duty to supply an explanation for King's discharge.")

defendant Rogers stating that "NEED has never had anybody in this position as young as me so it's definitely a change for the agency." (Ex. 1 (DE 40-1)). Moreover, the article continues:

> Rogers also said its important for the more than 50 year-old agency to be able to adapt with the changing times. She added her goal is to eventually have a more younger presence in NEED. "A lot of our employees are older, and I don't see a lot of the younger generation within management here." Rogers said. "I would like to see more like a volunteer base–especially with the younger or millennial base–because there are so many bright and new ideas that they have. I'm not taking away from the older generation, but sometimes it's hard for them to adapt and change. It's important for us to create more of a presence in the community and one way to do that is through social media. That's why we need to appeal to the younger generation."

(Id.).[10]

The above statements do not support plaintiffs Rodgers's and Powell's ADEA claims, where plaintiffs fail to allege a nexus between the statements and the employment decisions at issue. See E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992) (finding no discriminatory intent where the "alleged discriminatory statements were not directly related to any particular person, employment decision or pattern of decision making" and "no nexus exist[ed] between the alleged discriminatory statements and any of the employment decisions") (emphasis in original). Indeed, not only are defendant Roger's statements devoid of any reference to plaintiffs, her statements were published March 1, 2017, approximately one year before plaintiff Rodgers was discharged, (see Am. Compl. (DE 37) ¶¶ 100) and plaintiff Powell was suspended (see id. ¶ 159). Importantly, the Fourth Circuit has concluded that statements made approximately one to two years prior to an employment decision are too remote to have plausibly influenced the

---

[10] Although defendants attached this document to their motion to dismiss, plaintiffs selectively quoted from it and those quotations were "integral to and explicitly relied on in the complaint"; moreover, "plaintiffs do not challenge [the document's] authenticity", so the court may properly consider it in ruling on defendants' motion to dismiss. Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999); see Cozzarelli v. Inspire Pharmaceuticals, Inc., 549 F.3d 618, 625 (considering investment analyst reports attached to the defendants' motion to dismiss because the complaint selectively quoted from those reports and the plaintiffs did not challenge the reports' authenticity).

19

employment decision.  See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511-512 (4th Cir. 1994).

Moreover, the Fourth Circuit has repeatedly held that statements reflecting a desire to appeal to a younger generation, or to benefit from that generation's insights, such as those made by defendant Rogers, are not probative of discriminatory intent.  See id. (statement that "there comes a time when we have to make way for younger people" "creates no inference of age bias"); Clay Printing, 955 F.2d at 942 (statements indicating need to "attract newer, younger people" and "young blood" were "not probative of age discrimination or a discriminatory purpose"); Smith v. Flax, 618 F.2d 1062, 1066 (4th Cir. 1980) (finding "statements . . . that the Division's future lay in its young Ph.D's, and that all employees at some time reached the peak in efficiency" to be "truisms" that did not indicate a discriminatory purpose). Rather, to evince age-based animus, the statement must be "more than a fact of life . . . that carries with it no disparaging undertones." Birkbeck, 30 F.3d at 512; see Wilhelm v. Blue Bell, Inc., 773 F2d 1429, 1434 (4th Cir. 1985) (finding discriminatory intent in statements such as "the younger salesmen do a much better job than you older fellows. You older fellows have a tendency to become complacent after you have been around a while and run out of steam"; "Blue Bell doesn't want salesmen with good records anymore. . . . They want young men who can do the work for a lot less money."; and "My God, [are] you old guys still around. I thought we got rid of you at the last sales meeting.").

Here, defendant Rogers's statement includes several "truisms" and "facts of life", including that young people often possess bright, new ideas.  Moreover, she specifically states that she is "not taking away from the older generation", (Ex.1 (DE 40-1)), and her statement carries no disparaging undertones.  Thus, it cannot be inferred reasonably from defendant Rogers's

statements that plaintiffs Rodgers and Powell were terminated and suspended, respectively, because of their ages.

Accordingly, defendants' motion is granted in this part, and plaintiffs Rodgers's and Powell's age discrimination claims are dismissed with prejudice.

### c. Title VII Gender Discrimination

Defendants move to dismiss gender discrimination claims asserted by plaintiffs Wilson, Powell, Rodgers, and Hunt for failure to state a claim upon which relief can be granted. Plaintiffs Wilson, Hunt, and Rodgers allege they were terminated because of their gender, and plaintiff Powell alleges she was suspended because of her gender, in violation of Title VII.

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. See McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584-85 (4th Cir. 2015); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). Accordingly, plaintiffs must plausibly allege facts to satisfy the elements of a cause of action created by Title VII–that is–that defendant NEED "discharge[d] [them], or otherwise to discriminate[d]" against them "because of [their] . . . sex." 42 U.S.C. § 2000e-2; see McCleary-Evans, 626 F.3d at 585.

The elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs.,

21

LLC, 375 F.3d 288, 295 (4th Cir. 2004)); Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir. 2001).

### i.   Plaintiff Wilson

Plaintiff Wilson has alleged sufficient facts to give rise to a reasonable inference of each element of the prima facie case. First, plaintiff Wilson is female. Second, she alleges that she had been an exemplary employee for 24 years and never received a negative employment evaluation until defendant Rogers joined defendant NEED. (Am. Compl. (DE 37) ¶ 20). Third, she was terminated. Fourth, plaintiff Wilson alleges that defendant NEED treated an employee outside of the protected class differently. In particular, plaintiff Wilson alleges that she and plaintiff Rodgers were terminated for their involvement in transactions with Motivator Enterprises, LLC, which were determined to violate defendant NEED's conflict of interest policy. However, Chambers, a male employee, also procured two services from Motivator Enterprises, LLC, while knowing that plaintiff Rodgers was married to its operator, but he was not terminated or cited with a conflict of interest violation. (Id. ¶¶ 59-60).

Defendants seek to justify the differential treatment of Chambers by arguing that he was not similarly situated with plaintiffs Wilson or Rodgers. In support, defendants argue that unlike plaintiff Wilson, Chambers was not a member of defendant NEED's management team or a supervisory employee.[11] In addition, defendants argue that unlike plaintiff Rodgers, Chambers did not benefit from the transaction.

---

[11]    Defendants also argue that Chambers did not know plaintiff Rodgers would receive a benefit from the transaction. (Mem. (DE 41) at 24). However, plaintiffs allege that Chambers did have knowledge of plaintiff Rodgers's interest in Motivator Enterprises, LLC. (See Am. Compl. (DE 37) ¶ 109).

However, "evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made [when ruling on a motion to dismiss]." Woods v. City of Greensboro, 855 F.3d 639, 650–51 (4th Cir. 2017). At bottom, plaintiffs have alleged that two female employees, and one male employee, were all involved in the same transactions, which were deemed to violate the conflict of interest policy; yet, only the female employees were cited with a conflict of interest violation and terminated.[12] Such allegations permit the reasonable inference that a similarly situated employee outside of the protected class was treated differently. Accordingly, plaintiff Wilson has plausibly alleged that she was discharged because of her gender.

### ii. Plaintiffs Rodgers and Powell

Plaintiffs Rodgers and Powell fail to state gender discrimination claims, where they do not plausibly allege certain requisite elements. In particular, plaintiff Rodgers fails to allege any facts regarding her job performance, precluding the inference that she was qualified for her position or was otherwise meeting her employer's legitimate expectations. Moreover, plaintiff Powell fails to allege different treatment of similarly situated employees outside the protected class. Although plaintiff Powell alleges that she was suspended longer than Arrington, Arrington is a female, and thus within the protected class. Accordingly, defendants' motion is granted in this part, and plaintiffs Rodgers's and Powell's gender discrimination claims are dismissed with prejudice.

---

[12] Defendants argue that plaintiff Wilson's Title VII claims should be dismissed in light of Coleman v. Maryland Court of Appeals, 626 F.3d 187 (4th Cir. 2010). In Coleman, the Fourth Circuit upheld dismissal of the plaintiff's Title VII race discrimination claim, where the plaintiff, a black male, made conclusory allegations that he was fired because of race because a white employee with outside business involvements was not disciplined. 626 F.3d at 190. However, Coleman is instructively distinguishable from the instant matter, where in Coleman, "[t]he complaint d[id] not even allege that [the white employee's] "outside business involvements" were improper, let alone that any impropriety was comparable to the acts [the plaintiff] was alleged to have committed." 626 F.3d at 191. Here, in contrast, Chambers and plaintiff Wilson were involved in the same transactions.

23

### iii.    Plaintiff Hunt

Plaintiff Hunt fails to plausibly allege her termination was because of gender, where plaintiff Hunt herself identifies defendant NEED's reason for terminating her:  that she did not disclose her health condition underlying her request for additional FMLA leave.  (Am. Compl. (DE 37) ¶ 330).  She also fails to allege any facts from which the court might reasonably infer this reason was a pretext for gender discrimination.

Accordingly, plaintiff Hunt's claim for gender discrimination under Title VII is dismissed with prejudice.

### d.    Title VII Retaliation

Plaintiffs Wilson, Hunt,[13] and Powell allege they were retaliated against for engaging in protected oppositional conduct.

As relevant here, Title VII's Opposition Clause makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  The Fourth Circuit "has articulated an expansive view of what constitutes oppositional conduct, recognizing that it encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015) (internal quotations omitted).

---

[13]    Plaintiff Hunt alleges in a conclusory fashion that she "has opposed Defendants' unlawful violation of her rights under the law, to include but not limited to Title VII, FMLA, and the ADEA," and she "has been injured as a direct and proximate result of Defendants' retaliation."  (Am. Compl. (DE 37) ¶¶ 389, 393).  However, plaintiff Hunt fails to allege that she engaged in any oppositional conduct, let alone protected oppositional conduct.  In briefing, plaintiff Hunt argues she was retaliated against for taking FMLA leave. The court addresses plaintiff Hunt's FMLA retaliation claim in section A(2)(f)(ii), infra.

Moreover, "while the oppositional activity must be directed to an 'unlawful employment practice' under Title VII, 42 U.S.C. § 2000e–3(a)," the Fourth Circuit has "made clear that [courts] should also interpret 'unlawful employment practice' broadly. Id. Indeed, "an employee is protected when she opposes not only employment actions actually unlawful under Title VII but also employment actions she reasonably believes to be unlawful, and the Title VII violation to which the oppositional communication is directed may be complete, or it may be in progress." Id. (internal quotations omitted).

In determining whether a plaintiff engaged in protected oppositional activity, "the touchstone is whether the plaintiff's course of conduct as a whole (1) communicates to her employer a belief that the employer has engaged in a form of employment discrimination and (2) concerns subject matter that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful." Id. at 418 (emphasis in original) (internal quotations omitted). At bottom, the employer must be aware "of an employee action that he understood or should have understood to be opposition against a Title VII violation." Strothers, 895 F.3d at 336. (internal citation omitted). "When determining whether the employer should have understood the nature of the employee's action, courts examine not just the employee's complaint but also the factual context that is known to the employer." Id.

i. Plaintiff Wilson

Plaintiff Wilson alleges that defendant Rogers planned to decrease her salary and another senior staff member's salary by $6,000 and $4,000 respectively, to balance the budget and to increase two younger employees' salaries by $3,000 each, "in an attempt by defendant Ginell Rogers to discriminate against Plaintiff Gloria Wilson due to her age." (Am. Compl. (DE 37) ¶¶ 52-53, 55). Plaintiff Wilson further alleges that the use of her salary to balance the budget "was

25

viewed as a threat and created a hostile work environment." (Id. ¶ 88). Plaintiff Wilson "addressed the Board of Directors about the deduction of the salary" and thereafter "the Board of Directors directed Defendant Ginell Rogers to rescind the reduction of Plaintiff Gloria Wilson's salary." (Id. ¶ 78).

Defendants argue, and the court agrees, that plaintiff Wilson fails to plausibly allege engagement in protected oppositional conduct, where she fails to allege that she communicated to defendant NEED that the proposed salary decrease was a form of employment discrimination. The Fourth Circuit has held that employees need not use "magic words" such as "racial discrimination" or "sexual harassment" to convey that they are opposing employment discrimination. Strothers, 648 F.3d at 224; Okoli v. City Of Baltimore, 648 F.3d 216, 224 n.8 (4th Cir. 2011). Instead, general complaints of "harassment" are sufficient to put an employer on notice of the offending conduct. Strothers, 648 F.3d at 224. Likewise, an employee's "description of unethical, degrading and dehumanizing" conduct [can] suggest severe misbehavior related to her identity—not a mere workplace squabble." Okoli, 648 F.3d at 224. Here, however, plaintiff Wilson has not alleged any facts regarding what she stated to defendant Board of Directors when opposing her salary decrease. Without such allegations, the court cannot ascertain whether plaintiff Wilson's employer understood or should have understood that plaintiff was opposing alleged employment discrimination.

Plaintiffs argue that plaintiff Wilson's objection to her salary decrease is a protected activity under the First Amendment. However, First Amendment protection is irrelevant to the court's present inquiry. Moreover, plaintiff Wilson fails to allege that defendant NEED is a governmental entity, a necessary element in any First Amendment challenge. See Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019) ("[T]he Free Speech Clause [of the

26

First Amendment] prohibits only <u>governmental</u> abridgment of speech. The Free Speech Clause does not prohibit <u>private</u> abridgment of speech.") (emphasis in original).

Accordingly, plaintiff Wilson fails to state a claim for retaliation, and this claim is dismissed with prejudice.[14]

###### ii.    Plaintiff Powell

Plaintiff Powell alleges that she opposed her suspension without pay and demotion by appealing those employment actions in accordance with defendant NEED's personnel policies. (Am. Compl. (DE 37) ¶ 177).  During an appeal hearing before defendant Board of Directors, plaintiff Powell's attorney presented information "regarding the verbal suspension without pay and the demotion."  (<u>Id.</u> ¶ 179).  Moreover, when her appeal was referred to the PEC, plaintiff Powell presented information "refuting all of Defendant Elton Powell's allegations."  (<u>Id.</u> ¶ 183).  However, like plaintiff Wilson, plaintiff Powell fails to allege that she communicated to her employer a belief that her suspension and demotion were forms of employment discrimination. Indeed, she does not allege any facts regarding what her attorney presented to defendant Board of Directors, or what she presented to the PEC.  As a result, the court cannot ascertain if plaintiff Powell's employer understood she was opposing alleged employment discrimination.  Plaintiff Powell's argument that her appeal was protected activity under the First Amendment also fails for

---

[14]    Plaintiff Wilson alleges in a conclusory fashion "[f]rom February 9, 2018, Plaintiff Gloria Wilson has opposed Defendants' unlawful violation of her rights under the law, in include but not limited to Title VII, and the ADEA." (Am. Compl. (DE 37) ¶ 387).  However, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted).

reasons previously discussed. Accordingly, plaintiff Powell fails to state a claim for retaliation, and this claim is dismissed with prejudice.[15]

      e.      Hostile Work Environment

Plaintiffs Wilson, Rodgers, Powell, and Hunt assert hostile work environment claims. Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008). To state a hostile work environment claim, a claimant must demonstrate that the alleged conduct: 1) was unwelcome; 2) resulted because of her gender or age; 3) was sufficiently severe or pervasive to alter the conditions of her employment; and 4) was imputable to her employer." Boyer-Liberto v. Fountainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Causey v. Balog, 162 F.3d 795, 801 n.2 (4th Cir. 1998) (assuming without deciding that a hostile work environment claim under the ADEA exists where neither party disputed its existence).[16]

Under element two, "an employee is harassed or otherwise discriminated against 'because of' his or her gender [or age] if, 'but for' the employee's gender [or age], he or she would not have

---

[15]    Plaintiff Powell alleges in a conclusory fashion "[f]rom May 21, 2018, Plaintiff Evelyn has opposed Defendants' unlawful violation of her rights under the law, in include but not limited to Title VII, and the ADEA." (Am. Compl. (DE 37) ¶ 388). However, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted).

[16]    Likewise, where the parties in the present action do not dispute the existence of a hostile work environment claim under the ADEA, the court assumes without deciding that one exists.

been the victim of the discrimination." Ziskie v. Mineta, 547 F.3d 220, 226 (4th Cir. 2008). A plaintiff "may prove sex-based discrimination in the workplace even though she is not subjected to sexual advances or propositions," but can succeed only by showing that she "is the individual target of open hostility because of her sex." Id.

Element three has "has both subjective and objective components." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc). Whether the environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." Boyer-Liberto, 786 F.3d at 277 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). "That determination is made by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Here, the court considers plaintiffs Wilson, Powell, Rodgers, and Hunt's allegations together because "evidence about how other employees were treated in that same workplace can be probative of whether the environment was indeed a [ ] hostile one, even if the plaintiff did not witness the conduct herself." Ziskie v. Mineta, 547 F.3d 220, 225 (4th Cir. 2008). In briefing, plaintiffs argue the following allegations demonstrate a hostile work environment: 1) when plaintiff Powell was suspended, defendants Dr. Powell and Rogers moved her personal items, including a refrigerator containing food, to a closet, and when plaintiff Powell returned from her suspension, the food in the refrigerator was molded and multiple rodents and maggots were found inside (Am. Compl. (DE 37) ¶¶ 298-300); 2) defendant Rogers told plaintiff Powell she had to leave a conference in Greensboro and return to Rocky Mount, but the next day, defendant Rogers

29

changed her mind, and plaintiff Powell had to drive back to Greensboro from Rocky Mount (Id. ¶¶ 250-54); 3) defendant Dr. Powell terminated plaintiff Powell in the presence of a private citizen, a staff member, and defendant Collins, rendering the act the "most embarrassing and professionally devastating experience of Plaintiff Powell's life" (Id. ¶¶ 261-268); 4) defendant Dr. Powell communicated to the teaching staff that if they are caught speaking or talking to plaintiff Powell they will be reprimanded (Id. ¶ 256); 5) defendant Dr. Powell required the Head Start staff to sign a document that he prepared regarding plaintiff Powell's performance and threatened that if they did not sign the document they would be terminated (Id. ¶ 255 ); 6) defendant Rogers required plaintiff Powell to take annual leave to attend a re-entry program in Wilson (Id. ¶ 257); 7) defendant Rogers publicly insulted staff by implying that staff is incompetent and cannot submit documents without her assistance (Id. ¶ 259); 8) while on bereavement leave due to the death of her brother, plaintiff Wilson learned that defendant Rogers submitted a proposal to decrease her salary (Id. ¶¶ 74-75); 9) defendant Rogers emailed plaintiff Wilson at 4:00 p.m. on the day before plaintiff Wilson was scheduled to leave for vacation, instructing her to complete a report by 5:00 p.m., and a result, plaintiff Wilson and her staff had to work until 8:00 p.m. to finish the report (Id. ¶¶ 80-81); 10) defendant Rogers never used the report and told plaintiff Wilson's staff she did not know why plaintiff Wilson made them stay after work to complete it (Id. ¶ 81-82); 11) defendant Rogers tried to solicit negative comments from plaintiff Wilson's staff regarding plaintiff Wilson's job performance (Id. ¶ 84); and 12) defendant Rogers gave plaintiff Wilson's staff a copy of the budget, which revealed everyone's salaries and created animosity among the staff, and she used plaintiff Wilson's salary as an example of how the budget could be balanced.  (Id. ¶¶ 85-86).

Even assuming arguendo that the above allegations occurred because of plaintiffs' gender or ages, these allegations, taken together, are not sufficiently severe or pervasive to alter the conditions of plaintiffs' employment. As the Fourth Circuit has explained:

> Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII.

E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315–16 (4th Cir. 2008) (internal quotations omitted).

The cases relied on by plaintiffs are inapposite. For example, plaintiffs do not allege anyone repeatedly questioned them about sexual topics and their bodies, as the harassers did in Jennings v. Univ. of N. Carolina, 482 F.3d 686, 696–98 (4th Cir. 2007)(en banc) and E.E.O.C. v. Fairbrook Medical Clinic, P.A., 609 F.3d 320, 329 (4th Cir. 2020), or that they were subjected to demeaning epithets, like the plaintiffs in Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001). Accordingly, plaintiffs fail to state a claim for hostile work environment, and these claims are dismissed with prejudice.

### f. FMLA

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Claims for violations of the prescriptive rights set forth in § 2615 are "known as 'interference' or 'entitlement' claims." Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 546 (4th Cir. 2006). Additionally, the FMLA "contains proscriptive provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA."

Yashenko, 446 F.3d at 546. The retaliation provision states "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

Here, plaintiff Hunt brings claims for both retaliation and interference, which the court will address in turn, below.

### i. Interference Claim

To state an interference claim under the FMLA, a covered employee must establish "(1) [s]he is entitled to an FMLA benefit; (2) h[er] employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015) (citations omitted). Unlike a retaliation claim, employer intent is not relevant in assessing an interference claim. Sharif, 841 F.3d at 203 (citations omitted). Among other benefits, the FMLA provides that eligible employees "shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . due to a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(C). Upon the employee's return from FMLA leave, the employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced; or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1).

However, if an employee remains "unable to perform an essential function of the position" at the termination of her FMLA leave, the employee has no right to restoration. 29 C.F.R. § 825.216(c). Accordingly, as several courts in this circuit have held, "an employer does not violate the FMLA when it fails to reinstate an employee who is physically unable to return to work at the conclusion of the twelve-week period of FMLA leave." Ainsworth v. Loudon Cty. Sch. Bd., 851

32

F. Supp. 2d 963, 975 (E.D. Va. 2012); see Rodriguez v. Smithfield Packing Co., Inc., 545 F. Supp.

2d 508, 523 (D.Md.2008) (citing Edgar v. JAC Products, Inc., 443 F.3d 501, 513 (6th Cir.

2006) ("[I]nability to work at the end of the twelve-week period bars relief [under the FMLA]

because any prior violation caused no harm.").

    Here, plaintiff Hunt suggests that defendant NEED interfered with her FMLA rights when

defendant Dr. Powell "verbally demoted" plaintiff Hunt by stating "the other Family Service

Health staff had worked hard this summer while she was out of work on FMLA leave and her new

position is a Teacher's Assistant."  (Am. Compl. (DE 37) ¶ 326).   However, on September 19,

2018, two days before plaintiff Hunt was scheduled to return from FMLA leave, she submitted a

letter from Dr. Vogel, stating that plaintiff needed to remain off work for an additional six months.

(Id. ¶ 331).   Since plaintiff Hunt was unable to work at the conclusion of her 12 month FMLA

leave period, defendant NEED did not violate the FMLA by failing to reinstate plaintiff to her

previous position.   See e.g., Ainsworth, 851 F. Supp. 2d at 975.  Indeed, plaintiff Hunt's alleged

demotion never took effect; [17] therefore, plaintiff fails to plausibly allege the third element of an

interference claim—that is—that the alleged demotion caused her harm.   As such, plaintiff's

FMLA interference claim must be dismissed with prejudice.

        ii.    Retaliation Claim

---

[17]     Plaintiff Hunt concedes this point by failing to address it in her response to defendants' motion to dismiss. See Feldman v. Law Enf't Assocs. Corp., 955 F. Supp. 2d 528, 536 (E.D.N.C. 2013) ("The court finds that Perry has conceded that summary judgment is appropriate on both the wage claim and the contract claim because he has failed to respond to the arguments raised with respect to these claims in defendants' memorandum in support of the motion for summary judgment."); McLean v. Leonard, No. 5:14-CV-718-FL, 2015 WL 5725818, at *6 (E.D.N.C. Sept. 30, 2015) ("Plaintiff conceded these arguments by failing to address them in response to defendants' motion to dismiss."). Where plaintiff concedes the alleged demotion never took effect, she cannot rely on this employment decision for purposes of her FMLA claims.

Plaintiff Hunt suggests defendant NEED terminated her in retaliation for taking FMLA leave.[18] To succeed on a claim of retaliation, a plaintiff must show "that she engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity." Yashenko, 446 F.3d at 551 (citation omitted). "Unlike prescriptive entitlement or interference claims, employer intent here is relevant." Sharif v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016).

The court focuses on the first requirement of a retaliation claim—engagement in a protected activity. In order to trigger FMLA protection, an employee must "provide notice to her employer when she requires FMLA leave." Rhoads v. F.D.I.C., 257 F.3d 373, 382–83 (4th Cir. 2001). Upon receiving such notice, employers are "expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303 (b). Accordingly, "[a]n employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA–qualifying." Id. Indeed, "[f]ailure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA–qualifying." Id.

Here, plaintiff Hunt alleges that on September 19, 2018, two days before she was scheduled to return to work from FMLA leave, she submitted a letter to defendant NEED from Dr. Vogel stating that "Plaintiff Hunt was under her care for a medical condition and needs to remain off work for six (6) months." (Am. Compl. (DE 37) ¶ 331). On September 21, 2018, defendant Rogers "aggressively pressured" plaintiff Hunt to disclose the medical condition that required her

---

[18]     The Fourth Circuit addresses claims of retaliation for taking FMLA leave as retaliation claims under § 2615(a)(2) rather than interference claims under § 2615(a)(1). See Yashenko, 446 F.3d at 551. Recently, the Fourth Circuit questioned this approach, in light of the Department of Labor's interpretation of § 2615(a), but did not disturb it. Fry v. Rand Constr. Corp., _ F. 3d _, 2020 WL 3550689, at *5 (4th Cir. 2020). Accordingly, the court construes plaintiff's allegation that she was retaliated against for taking FMLA leave as a retaliation claim under § 2615(a)(2).

34

to take additional FMLA leave.  (Id. ¶ 347).  However, plaintiff Hunt believed that the letter from Dr. Vogel was sufficient, and she did not return to work.  (Id. ¶ 334).  Thereafter, plaintiff Hunt received a letter from defendant Rogers dated October 29, 2018, advising her she was terminated for not disclosing the medical condition associated with her request for FMLA leave.  (Id. ¶ 333).

Defendants argue, and the court agrees, that plaintiff Hunt fails to plausibly allege she engaged in a protected activity, where she refused to disclose the medical condition underlying her FMLA leave request.  The plain language of the FMLA's implementing regulations supports this conclusion, where it states "[f]ailure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection."  29 C.F.R. § 825.303 (b).

Although the Fourth Circuit has not addressed this precise issue, in the unpublished opinion, Peeples v. Coastal Office Prod., Inc., 64 F. App'x 860, 863 (4th Cir. 2003), the Fourth Circuit considered an FMLA claim raised under similar circumstances.  In Peeples, a plaintiff suffering from depression and anxiety took more than three weeks off from work. 64 F. App'x at 860.  At the outset of his long absence, the only information plaintiff provided his employer was an emergency room note that stated "he was not to return to work for a week."  Id. at 861-63.  The following week, plaintiff submitted a note from his physician stating that he was "not yet ready to resume work."  Id. at 863.  Over the next couple of weeks, plaintiff's employer "tried repeatedly to solicit information from [plaintiff] in order to assess his needs. However, [plaintiff] refused to provide any information that might have triggered [his employer's] duties under the FMLA."  64 F. App'x at 863.

In effect, the Fourth Circuit held that plaintiff's employer "was utterly incapable of making a preliminary determination as to whether [plaintiff's] absence was justified . . . because [plaintiff] and his doctor were providing incomplete responses, indeed, dishonest responses, to defendant's

35

informal requests for information." Id. at 864. "In such a situation, when notice of a possible serious medical condition is deliberately withheld and false information is given, it cannot be said that an employee has been terminated in violation of the FMLA." Id. (citing Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997)).

Here, as in Peeples, plaintiff alleges she submitted a doctor's note that indicated she needed to take time off from work. Thereafter, plaintiff refused to disclose her underlying medical condition to her employer, precluding her employer from determining whether she qualified for FMLA leave. Accordingly, plaintiff fails to plausibly allege that she engaged in protected activity, and her FMLA retaliation claim must be dismissed with prejudice.

g.      Wrongful Termination

Plaintiffs Wilson, Rodgers, and Hunt assert NCEEPA claims, on grounds that plaintiffs Wilson and Rogers were wrongfully terminated due to their ages and gender, and plaintiff Hunt was wrongfully terminated for taking FMLA leave and because of her gender. Under North Carolina law, an employee-at-will may bring a cause of action against his employer for terminating him in violation of public policy. Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331 (1997). NCEEPA provides "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a); see also Bigelow v. Town of Chapel Hill, 227 N.C. App. 1, 13 (2013) ("A retaliatory firing based upon an employee's filing of a claim of discrimination in the workplace clearly violates public policy and could support a wrongful discharge claim.").

The court applies the same standards of proof for a wrongful termination as it does under Title VII. N. Carolina Dep't of Corr. v. Gibson, 308 N.C. 131, 136 (1983) ("[W]e look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases."). Moreover, with some exceptions, where Title VII and the ADEA exhibit similar language and are indeed "statutory kin," Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994), the standards applicable to an ADEA claim also govern claims of age discrimination under NCEEPA. See Hughes, 48 F.3d at 1383.

For the same reasons that the court denies defendants' motion to dismiss plaintiffs Wilson's ADEA and gender discrimination claims, the court denies defendants' motion to dismiss plaintiff Wilson's NCEEPA claims. Likewise, where the court grants defendants' motion to dismiss plaintiffs Rodgers's and Hunt's gender discrimination claims, and plaintiffs Rodgers's ADEA claim, and it also grants defendants' motion to dismiss plaintiffs Rodger's and Hunt's NCEEPA claims.[19] Plaintiffs Rodgers's and Hunts' NCEPPA claims are dismissed with prejudice.

h.    Intentional Infliction of Emotional Distress

Plaintiffs Wilson, Rodgers, Powell, and Hunt brings claims for intentional infliction of emotional distress.

"Elements of this tort are (1) extreme and outrageous conduct by the defendant, (2) which is intended to cause and does cause (3) severe emotional distress to another." Turner v. Thomas, 369 N.C. 419, 427 (2016). "[E]xtreme and outrageous conduct is that which exceeds all bounds of decency tolerated by society." Id. The second element may be satisfied "where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional

_____

[19]    The court declines to address whether termination in violation of the FMLA could support a wrongful discharge claim, where plaintiff Hunt fails to state a claim under the FMLA, as set forth in more detail herein.

37

distress."  Dickens v. Puryear, 302 N.C. 437, 452 (1981).  Under the third element, "'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."  Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).

Here, plaintiffs fail to allege extreme and outrageous conduct that exceeds all bounds of decency.  The court has already determined that plaintiffs fail to state hostile work environment claims, and as the Fourth Circuit has held, "it would defy reason to allow a claim for outrageousness of conduct go forward when the district court has already determined that the factual predicate for such an action does not exist, that is, that the conduct complained of, in a full contextual analysis was not sufficiently egregious to create an abusive or hostile environment." Dwyer v. Smith, 867 F.2d 184, 194–95 (4th Cir. 1989).  Moreover, "[i]n employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable."  Bray v. Tenax Corp., 905 F. Supp. 324, 330 (E.D.N.C. 1995); see also Swaim v. Westchester Acad., Inc., 170 F. Supp. 2d 580, 584 (M.D.N.C. 2001) (citing Wilson v. S. Nat'l Bank of N. Carolina, 1996 WL 445088, at *5 (4th Cir. Aug. 8, 1996) (unpublished)) ("Rarely will conduct in the employment context rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.").

Accordingly, plaintiffs fail to state a claim for intentional infliction of emotional distress, and these claims are dismissed with prejudice.[20]

---

[20]    Plaintiffs appear to be arguing that, because defendant Rogers allegedly did not follow defendant NEED's policies when she discharged plaintiffs Wilson and Rogers, defendant Rogers's actions constituted outrageous conduct under McCormick v. AT&T Tech. Inc., 934 F.2d 531 (4th Cir. 1991).  Plaintiffs' reliance on McCormick is misplaced. In McCormick, the Fourth Circuit considered whether the plaintiff's intentional infliction of emotional distress claim was preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a).  934 F.2d at 535.  The

38

i.      Defamation

Plaintiff Powell brings a defamation claim against defendant NEED.[21]

Slander is spoken defamation and libel is written defamation.  <u>Greer v. Skyway Broad. Co.</u>, 256 N.C. 328, 390-91 (1962).  As relevant here, to plead a claim for defamation per se in North Carolina, plaintiff must allege that:

> (1) defendant spoke or published base or defamatory words which tended to prejudice [plaintiff] in [her] reputation, office, trade, business or means of livelihood or hold [plaintiff] up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person.

<u>Cummings v. Lumbee Tribe</u>, 590 F.Supp.2d 769, 774 (E.D.N.C. 2008) (internal quotation marks omitted); <u>Renwick v. News & Observer Pub. Co.</u>, 310 N.C. 312, 317 (1984) ("Under the well established common law of North Carolina, a libel per se is a publication . . . when considered alone without innuendo, colloquium or explanatory circumstances . . . tends to impeach a person in that person's trade or profession").  Alternatively, if extrinsic or explanatory evidence is needed in connection with the words to show they have defamatory character, then plaintiff must prove defamation per quod.  <u>Cummings</u>, 590 F.Supp.2d at 774.  This claim is composed of the same elements of defamation per se, with the additional requirements of: (4) special damages and (5) malice.  <u>Id.</u>

---

court held that the intentional infliction of emotional distress claim was preempted, since resolution of the claim would require interpretation of the collective bargaining agreement to determine whether the employer was authorized to act as it did.  <u>Id.</u> at 535-38.  <u>McCormick</u> does not stand for the general proposition that all acts committed without authorization are extreme and outrageous, giving rise to liability for intentional infliction of emotional distress.

[21]      Plaintiff Powell brings this claim against "Defendant Employer, through its authorized employees (Ginell Rogers and Elton Powell) action on behalf of Employer."  (Am. Compl. (DE 37) ¶ 415) (parenthesis in original). Since defendant NEED is plaintiff Powell's employer, the court considers this claim to be brought against defendant NEED.

Here, plaintiff Powell alleges that defendant Rogers and Dr. Powell "stated electronically, or in writing, or orally to the Policy Counsel, private consultant and staff that Plaintiff Evelyn Powell committed fraud by making counterfeit CPR Certification Cards." (Am. Compl. (DE 37) ¶¶ 415-16). Plaintiff Powell alleges that this conduct "constitutes libel per se and or slander per se in that false statements impute to Plaintiff the commission of some criminal offense involving moral turpitude for which Plaintiff, if the charge is true, may be indicted and punished; and further, these statements prejudiced Plaintiff in her reputation as County Commissioner, trade, educator, or means of livelihood." (Id. ¶ 417).

Defendants argue these allegations are insufficient to state a claim for defamation per se because plaintiff fails to allege publication to a third person. According to defendants, the alleged statements regarding CPR training cards were intracorporate communications, and defendants cite Dale v. Red Hat, Inc., No. 5:18-CV-262-BO, 2018 WL 6172516, at *3 (E.D.N.C Nov. 26, 2018) for the proposition that "in the employment context, agents and employees of a single employer are not considered third persons to the employer or to each other."

While plaintiff Powell alleges the defamatory statement was made to defendant NEED's staff members and defendant Board of Directors, she also alleges the statement was made to a private consultant. In later stages of this litigation, defendants can argue the private consultant is an agent of defendant NEED by proffering appropriate evidence. However, at this preliminary stage, drawing all reasonable inferences in favor of plaintiff Powell, plaintiff Powell has plausibly alleged that the defamatory statement was "published" through its conveyance to a private consultant. Accordingly, plaintiff Powell states a claim for defamation, and defendants' motion to dismiss is denied in this part.

j.      Negligent Hiring, Retention, and Supervision

40

A claim for negligent, hiring, retention, and supervision is "entirely independent of the employer's liability under the doctrine of <u>respondeat superior</u>." <u>Braswell v. Braswell</u>, 330 N.C. 363, 373 (1991) (emphasis in original). To state a claim, plaintiffs must allege

> (1) the specific negligent act on which the action is founded . . . [;] (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; [] (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in 'oversight and supervision,' . . . ; and (4) that the injury complained of resulted from the incompetency proved.

<u>Medlin v. Bass</u>, 327 N.C. 587, 590–91 (1990) (emphasis omitted) (quoting <u>Walters v. Lumber Co.</u>, 163 N.C. 536, 541 (1913)); <u>see</u> <u>Pleasants v. Barnes</u>, 221 N.C. 173, 177 (1942). An employer's liability for negligent supervision and retention also extends to an incompetent employee's intentional torts. <u>See, e.g.</u>, <u>Wegner v. Delly-Land Delicatessen, Inc.</u>, 270 N.C. 62, 65 (1967); <u>Lamb v. Littman</u>, 128 N.C. 361, 363–64 (1901).

Turning to element one, plaintiffs allege that defendant Dr. Powell was negligent in demoting plaintiff Hunt without written notice, as required by defendant NEED's policies, and defendants Rogers and Dr. Powell were negligent in terminating plaintiffs Wilson and Rodgers without issuing a written reprimand first, as required by defendant NEED's policies. (Am. Compl. (DE 37) ¶¶ 119-120; Resp. (DE 42) at 22).[22] Defendants argue, however, that North Carolina is an employment at-will state, and employers can terminate employees for any rational or irrational reason, with or without notice, without liability in negligence, citing <u>Elhassan v. Proctor & Gamble Mfg. Co.</u>, No. 1:12-CV-1039, 2014 WL 1281231, at *7 (M.D.N.C. Mar. 27, 2014).

---

[22] Plaintiffs also argue defendant Dr. Powell was negligent for suspending plaintiff Powell for six months without pay for merely investigating an alleged incident. However, plaintiffs fail to explain how such behavior constitutes negligence.

41

Although North Carolina is an employment at-will state, North Carolina courts have carved out a limited exception to the at-will doctrine, when an employer fails to follow its personnel policies and procedures. For this narrow exception to apply, the employer's policies or procedures must be expressly included in the employment contract, and the policies and procedures must indicate that employees will be terminated for "just cause" only. See Soles v. City of Raleigh Civil Serv. Comm'n, 345 N.C. 443, 446–47 (1997); Harris v. Duke Power Co., 319 N.C. 627, 630 (1987).

Here, plaintiffs have alleged that defendant NEED's policies required defendant Rogers to give plaintiffs Wilson and Rodgers written reprimands prior to terminating them and defendant Dr. Powell to give plaintiff Hunt written notice before demoting her. (Am Compl. (DE 37) ¶¶ 119-20, 327). However, plaintiffs fail to allege that defendant NEED's policies were expressly included in their employment contracts or that defendant NEED's policies provided that employees would be terminated for "just cause" only. Without these allegations, plaintiffs have not plausibly alleged that defendant NEED had a duty to follow its policies and procedures.

Plaintiffs also argue that Defendants Rogers's and Powell's alleged defamation of plaintiff Powell constitutes tortious conduct for purposes of element one. However, plaintiffs fail to allege that defendant NEED had actual or constructive notice of defendants Dr. Powell's and Rogers's alleged defamatory tendencies. Plaintiffs allege that defendant Rogers was not the top candidate for the Executive Director position, and she lacked supervisory experience. (Am. Compl. (DE 37) ¶¶ 399-400). Moreover, plaintiffs allege defendant Rogers had never managed a budget comparable to defendant NEED's budget before she was hired as the Executive Director. (Id. ¶ 400). Regarding defendant Dr. Powell, plaintiffs allege that he did not have "equivalent supervisory experience" or any experienced leading a Head Start program. (Id. ¶ 404). In addition,

42

plaintiffs allege he was not knowledgeable regarding Head Start rules and regulations. (Id.). Even construing these allegations in the light most favorable to plaintiffs, defendant Roger's lack of budgetary or supervisory experience, and defendant Dr. Powell's unfamiliarity with Head Start regulations, could not put defendant NEED on notice that defendants Rogers and Dr. Powell would allegedly defame one of its employees. Accordingly, plaintiffs' negligent hiring, retention, and supervision claims are dismissed with prejudice.

    k.  Dismissals with Prejudice

Where plaintiffs have sought to amend their complaint twice, informed by two rounds of briefing on motions to dismiss, it is unlikely that further amendment to the factual allegations will cure the deficiencies in plaintiffs' claims, and dismissal in this instance is with prejudice.

B.  Motion to Amend

1.  Standard of Review

Where, as here, a party seeks leave to amend after a responsive pleading or Rule 12(b) motion has been filed, the party "may amend its pleading only with the opposing party' s written consent or the court' s leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). With respect to futility, the court may deny leave to amend "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

2.      Analysis

Plaintiffs seek to join Dr. Blue as a plaintiff, and plaintiff Powell seeks to assert NCEEPA and retaliation claims, as well as allege additional facts in support of her ADEA; gender discrimination; hostile work environment; negligent hiring, retention, and supervision; and intentional infliction of emotional distress claims. Defendants oppose the instant motion to amend on grounds that: 1) plaintiffs failed to file an accompanying memorandum, in contravention of Local Civil Rule 7.1(e); 2) joinder of Dr. Blue is improper under Federal Rule of Civil Procedure 20(a); and 3) plaintiff Powell's proposed amendments are futile.

As an initial matter, plaintiffs filed a memorandum in support of the instant motion to amend on August 23, 2020, rendering moot defendants' first argument in opposition. Accordingly, the court turns to defendants' argument that joinder of Dr. Blue is improper under Federal Rule of Civil Procedure.

a.      Proposed Joinder of Dr. Blue

As relevant here, Federal Rule of Civil Procedure 20(a) provides:

[p]ersons may join in one action as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). According to the Fourth Circuit, "Rule 20 gives courts wide discretion concerning the permissive joinder of parties, and should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 218 n.5 (4th Cir. 2007).

44

Importantly, "[t]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." Id.

Here, although Dr. Blue alleges that defendant NEED engaged in a pattern or practice of gender and age discrimination, Dr. Blue's proposed claims are based upon discrete events that occurred predominantly from January 7, 2019, until August 21, 2019, well after defendant NEED terminated plaintiffs Hunt, Rodgers, and Wilson. (Prop. 2d. Am. Compl. (DE 45-1) ¶¶ 353-372). The Fourth Circuit has not addressed whether such pattern or practice allegations satisfy the joinder requirements of Rule 20(a). While recognizing that a court within the Fourth Circuit has held that "pattern and practice" claims necessarily satisfy both the "transaction" and "common questions" prongs of Rule 20(a), see King v. Ralston Purina Co., 97 F.R.D. 477, 480 (W.D.N.C. 1983), this court previously severed certain plaintiffs' claims, where they relied upon "pattern and practice" allegations of police misconduct in Ballentine v. Town of Coats, No. 5:11-CV-524-FL, 2012 WL 4471605, at *3 (E.D.N.C. Sept. 26, 2012). In Ballentine, the court found that "[w]hile different plaintiffs appear to have claims in common, their claims involve alleged events taking place at different times, in different places, with different groupings of defendants." Ballentine v. Town of Coats, No. 5:11-CV-524-FL, 2012 WL 4471605, at *4 (E.D.N.C. Sept. 26, 2012). As a result, the court found that "[t]he different evidence plaintiffs would necessarily need to prove their claims, and the types of defenses anticipated to be raised, pose a high risk of confusion, prejudice, and delay." Ballentine v. Town of Coats, No. 5:11-CV-524-FL, 2012 WL 4471605, at *4 (E.D.N.C. Sept. 26, 2012).

Here, as in Ballentine, Dr. Blue seeks to assert similar claims as plaintiffs; however, these claims are predicated upon wholly discrete events that occurred much later than the events already

45

pleaded. Accordingly, the court finds that the risk of prejudice, confusion, and delay precludes joinder of Dr. Blue in the instant action. Plaintiffs arguments to the contrary are misplaced, where plaintiffs rely on Federal Rule of Civil Procedure 15(a)(2) in support of the instant motion, and do not address whether joinder is proper under Rule 20(a). Accordingly, the court denies without prejudice plaintiffs' motion to amend in this part.

### b. Plaintiff Powell's Proposed Amendments

Plaintiff Powell seeks to assert retaliation and NCEEPA claims and allege additional facts in support of her ADEA; gender discrimination; hostile work environment; negligent hiring, retention, and supervision; and intentional infliction of emotional distress claims. Defendants oppose the amendments on futility grounds.

As an initial matter, the court grants that part of plaintiffs' motion to amend seeking to allege additional facts that are relevant to plaintiff Wilson's ADEA and gender discrimination claims, where the court has found that those claims survive motion to dismiss, as set forth in more detail herein. The court addresses plaintiff Powell's proposed amendments, in turn below. In the interest of judicial economy, the court incorporates by reference its earlier discussion of legal principles and standards that apply to the following claims.

### i. Retaliation

In support of her proposed retaliation claim, plaintiff Powell alleges that from March 14, 2019, through May 23, 2019, she submitted information to the Head Start Region IV office regarding "the corruption at NEED this past spring." (Prop. Am. Compl. (DE 45-1) ¶ 404). Specifically, plaintiff Powell reported that defendant Rogers altered many of the documents that were requested by the regional team. (Id.). Moreover, plaintiff Powell alleges she made the Head Start agency aware that defendant NEED did not have enough teachers to open the education

46

centers in August 2019 because defendant Rogers did not fill those positions in time. (Id. ¶ 406). Plaintiff Powell alleges that she was terminated in retaliation for reporting the foregoing information. (Id. ¶ 408).

Plaintiff Powell fails to state a claim for retaliation, where she fails to plausibly allege that she engaged in protected oppositional activity. Protected "opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (emphasis added). Although plaintiff Powell alleges she engaged in oppositional activity by reporting defendant NEED's misconduct to Head Start, the misconduct she reported was not discrimination. Rather, she reported that defendant Rogers allegedly altered documents and failed to fill certain positions on time. Importantly, "Title VII is not a general bad acts statute, [ ] and it does not prohibit private employers from retaliating against an employee based on her opposition to [ ] practices that are outside the scope of Title VII." Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); Lightner v. City of Wilmington, N.C., 545 F.3d 260, 264 (4th Cir. 2008) (Title VII is not a general whistleblower statute.). Accordingly, plaintiff Powell fails to state a claim for retaliation under Title VII.

To the extent plaintiff Powell seeks to assert a retaliation claim under North Carolina Whistleblower Protection Act ("NCWPA"), such claim also fails, where plaintiff Powell does not allege that defendant NEED is a state employer. See N.C. Gen. Stat. §§ 126-84, 126-85; see also Johnson v. Forsyth Cty., 227 N.C. App. 276, 277 (2013) (Individuals who are not state employees "[are] not entitled to protection under the provisions of the North Carolina Whistleblower Act."). Likewise, plaintiff fails to state a claim under the Whistleblower Protection Act, where plaintiff

does not allege that defendant NEED is a federal employer.  See 5 U.S.C. § 1221; see also Bunce v. Comput. Scis. Corp., 113 F. Supp. 3d 234, 237 (D.D.C. 2015) ("[A]n individual remedy for retaliation for whistleblowing is provided by federal law in appropriate cases . . . This remedy, however, is available only to 'an employee, former employee, or applicant for employment' of the United States.") (citing 5 U.S.C. §§ 1221(a); 2105(a)).[23]  Accordingly, plaintiffs' motion to amend is denied in this part on futility grounds.

ii.     NCEEPA

Plaintiff Powell seeks to bring a NCEEPA claim, on grounds that she was wrongfully terminated on August 21, 2019, due to her gender and age.  However, plaintiff Powell's proposed NCEEPA claim fails, where she does not plausibly allege that she was meeting her employer's legitimate expectations, a requisite element of discriminatory discharge claims under the ADEA and Title VII.  See Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019) (providing the elements of an ADEA discriminatory discharge claim); Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (stating the elements of a Title VII discrimination claim);  N. Carolina Dep't of Corr. v. Gibson, 308 N.C. 131, 136 (1983) ("[W]e look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases.").

Importantly, plaintiff Powell's termination letter indicated that she was fired due to her "inefficiency, negligence, or incompetence" as well as her "failure to obey supervisor's instructions and discourteous acts towards co-workers."  (Prop. 2d. Am. Compl. (DE 45-1) ¶¶ 361).   After plaintiff Powell appealed her termination, a Special Committee voted to uphold her

---

[23]     Plaintiff Powell does not cite any cases, nor is the court aware of any, supporting her argument that a private entity's employees may sue under the NCWPA or the WPA merely because the private entity receives state or federal funding.

48

termination due to "unsatisfactory job performance." (Id. ¶ 367). Plaintiff attempts to dispute defendant NEED's assessment of her job performance by 1) providing examples of required tasks that she completed, 2) citing a previous positive performance evaluation, and 3) explaining that she did not realize defendant Rogers would be offended when she called her a "little girl." (Id. ¶¶ 361, 364). However, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960–61 (4th Cir. 1996).

Accordingly, plaintiffs' motion to amend is denied in this part on futility grounds.

### iii. Age and Gender Discrimination

As stated in more detail herein, plaintiff Powell fails plausibly allege she was suspended because of her age and gender, where she fails to allege different treatment of similarly situated individuals outside of her protected age and gender classes. In particular, plaintiff Powell alleges that Arrington received a shorter suspension, but she alleges that Arrington is female, and fails to allege Arrington's age. Plaintiff Powell's additional allegations, set forth in the proposed second amended complaint, do not correct these deficiencies. Accordingly, plaintiffs' motion to amend is denied in this part on futility grounds.

### iv. Hostile Work Environment

In support of her hostile work environment claim, plaintiff Powell alleges that she was: "1) unfairly and harshly criticized for no[n] legitimate reasons; 2) unfairly blamed for the poor work of others; 3) denied appropriate training or instruction and, when seeking out instruction or training, being chastised for doing so; 4) had [her] suggestions and requests dismissed and disregarded; 5) unfairly and unreasonably embarrassed in front of colleagues so as to become ostracized in the office; 6) issued false letters of reprimand and had [her] personnel file papered

49

with false documentation; 7) had [her] annual performance review unfairly deflated; 8) blocked from attending important meetings; and 9) yelled at and subjected to threatening leering." (Prop. 2d. Am. Compl. (DE 45-1) ¶ 393).

Even assuming the foregoing conduct was done on the basis or age or sex, these allegations, taken together, are not sufficiently severe or pervasive to alter the conditions of plaintiffs' employment. As the Fourth Circuit has explained:

> Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII.

E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315–16 (4th Cir. 2008) (internal quotations omitted). Accordingly, plaintiffs' motion to amend is denied in this part on futility grounds.

v.       Intentional Infliction of Emotional Distress

Where plaintiff Powell fails to plausibly allege conduct sufficiently severe and pervasive to alter the conditions of her workplace, she likewise fails to allege "extreme and outrageous conduct that exceeds all bounds of decency", a requisite element of her proposed IIED claim. See Dwyer v. Smith, 867 F.2d 184, 194–95 (4th Cir. 1989) ("[I]t would defy reason to allow a claim for outrageousness of conduct go forward when the district court has already determined that the factual predicate for such an action does not exist, that is, that the conduct complained of, in a full contextual analysis was not sufficiently egregious to create an abusive or hostile environment."). Accordingly, plaintiffs' motion to amend is denied in this part on futility grounds.

vi.       Negligent Hiring, Retention, and Supervision

50

As stated in more detail herein, plaintiffs' failure to allege that defendant NEED had actual or constructive notice of defendants Dr. Powell's and Rogers's alleged defamatory tendencies is fatal to their claim for negligent hiring, retention, and supervision. Plaintiff Powell's additional allegations, set forth in the proposed second amended complaint, do not correct this deficiency. Accordingly, plaintiffs' motion to amend is denied in this part on futility grounds.

In sum, plaintiffs' motion to amend is granted where plaintiffs seek to allege additional facts relevant to plaintiff Wilson's ADEA and gender discrimination claims, but it is denied in remaining part.

C.     Initial Planning and Scheduling

Pursuant to Federal Rule of Civil Procedure 26(f), the court sets the following deadlines and requirements for conference activities, initial disclosures, and for submission of the parties' joint status report and proposed plan for discovery.

1.     Rule 26(f) Conference

Unless good cause is shown in request for exemption or stay, and the court orders otherwise, the Rule 26(f) conference must occur on or before **21 days** from entry of this order. The parties are jointly responsible for arranging the conference, which shall involve counsel for each represented party and all unrepresented parties, and for attempting in good faith to agree on a proposed plan for completion of discovery, filing of motions, pretrial and trial activities, and other matters addressed in this order.

2.     Initial Disclosures

Mandatory initial disclosures required by Rule 26(a)(1) must be made within **14 days** after the Rule 26(f) conference, unless (a) a different time is set by stipulation of parties or court order, or (b) a party objects during the Rule 26(f) conference and states the objection and the response

51

thereto in the report and plan filed with the court. Absent a stipulation or court order, any party first served or otherwise joined after the conference must make these disclosures within 30 days after being served or joined.

Failure to disclose information required by Rule 26(a) or 26(e)(1) may subject the offending party or parties to sanctions pursuant to Rule 37. In order to facilitate settlement negotiations and to avoid unnecessary expense, the parties may agree that, without any need for formal requests for production, copies of the various documents and/or electronically stored information described in the parties' respective Rule 26(a)(1) disclosures shall be exchanged or made available for inspection and copying by a date certain.

3.      Joint Report and Plan

The report and plan shall be filed with the court within **14 days** after the conference. The report and plan shall inform of the date on which the Rule 26(f) conference took place, and persons participating therein. The following must be considered at the Rule 26(f) conference and included in the report and plan:

A.      Discussion of the nature and complexity of the case. This shall be presented in the form of a brief statement which contains information from all parties and presents their respective positions including:

1)      The asserted basis for the court's subject matter jurisdiction;

2)      The most important or key factual issues and legal issues that are believed to be involved in the case; and

3)      A breakdown of damages sought.

B.      Specific information concerning the parties' plan for proposed discovery, including:

52

1) The subjects on which discovery may be needed;

2) Whether discovery shall be conducted in phases and/or limited to or focused upon particular issues;

3) The categories of discovery to be utilized by the parties, and proposed limitations. Where any proposed limitation is different from that imposed by the Federal Rules of Civil Procedure and/or the court's Local Rules, specific reason therefor shall be set forth;

4) Whether there are any issues relating to disclosure or discovery of electronically stored information, including issues as to the form(s) in which such information shall be produced;

5) Whether there are any issues relating to claims of privilege or protection as trial-preparation material. The parties shall specify whether they wish to obtain by consent a court order memorializing the parties' agreement regarding 1) inadvertent disclosures, pursuant to Fed. R. Evid. 502(d); or 2) privilege log protocols, such as automated logs, exemptions for documents created after litigation commences, or criteria for expanded log entries. In the event the parties seek a court order regarding inadvertent disclosures or privilege logs, the parties shall propose consent order language in their joint report and plan.;

6) When the need for a Rule 30(b)(6) deposition is known early in the case, the Rule 26(f) conference may provide an occasion for beginning discussion between the parties regarding the number and description of matters for examination and the identity of persons who will testify. At the same time,

53

it may be productive to discuss other matters, such as having the serving party identify in advance of the deposition the documents it intends to use during the deposition, thereby facilitating deposition preparation. In appropriate cases, it may be helpful to include reference to Rule 30(b)(6) depositions in the discovery plan submitted to the court under Rule 26(f) and in the matters considered at a pretrial conference under Rule 16. The court encourages the parties to memorialize in Rule 26(f) report any agreements for purposes of streamlining Rule 30(b)(6) depositions.

7) The date on which all discovery shall be concluded (not the last date of issuance; rather, this date sets the discovery bar date); and

8) Whether any particular discovery problems are anticipated.

C. Proposed deadlines in addition to the deadline for discovery mentioned above, including for:

1) Disclosure of expert witness information where appropriate;

2) Joining additional parties;

3) Amending pleadings; and

4) Filing of all motions, including preliminary and dispositive ones (except motions in limine). The court shall be advised whether there are preliminary matter(s) which may require early disposition.

D. The possibility of settlement and the parties' information concerning which ADR method (mediation, arbitration, summary trial, or other) is appropriate together with the proposed deadline for its completion. Local Civil Rule 101; see Local Civil Rules 101.1, 101.2, 101.3 for alternative ADR procedures.

54

1)      Absent special considerations, a settlement procedure appropriate to a particular case shall be used in every civil action in advance of the final pretrial conference.

E.      Whether either party requests that a Rule 16(b) FED. R. CIV. P., pretrial conference be scheduled in the case, prior to entry by the court of its case management order.

F.      Absent request for a Rule 16(b) pretrial conference at this juncture in the case, a case management order shall be entered immediately after receipt and consideration of the parties' joint report and plan, and the issues raised in the pleadings. Case deadlines established among the terms of the order will not be altered by the court absent extenuating circumstances.[24]

G.      Any scheduling issue affecting counsel or a party. This report affords the opportunity to announce compelling personal or professional considerations, as appropriate, which may affect the scheduling or course of proceedings.

If the parties have made a good faith attempt to confer and submit a joint discovery plan, but have been unable to do so, the parties shall file separate plans within the allotted time period, including the party's respective position and information as would be included in a joint report.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 40) is GRANTED IN PART and DENIED IN PART and plaintiffs' motion to amend (DE 45) is GRANTED IN PART AND DENIED IN PART, as set forth below:

---

[24]      Upon decision by the court on any dispositive motion, a trial date certain will be set by separate order entered after opportunity is accorded the parties to inform more particularly on trial scheduling. Said supplemental case management order will instruct also on pretrial procedures necessary to be followed in a bench or jury trial. Ordinarily, a final pretrial conference will be set approximately two weeks prior to the start of trial.

55

1) Plaintiffs' ADEA, Title VII, and NCEEPA claims against defendants Rogers, Collins, Powell, and Board of Directors are DISMISSED WITH PREJUDICE. Where all claims against defendants Rogers, Collins, Powell, and Board of Directors have been dismissed, the foregoing defendants are DISMISSED from the case.

2) Plaintiffs' retaliation; hostile work environment; intentional infliction of emotional distress; negligent hiring, retention, and supervision claims are DISMISSED WITH PREJUDICE.

3) Plaintiff Wilson's ADEA, gender discrimination, and NCEEPA claims against defendant NEED are ALLOWED TO PROCEED.

4) Plaintiff Powell's ADEA and gender discrimination claims are DISMISSED WITH PREJUDICE. Plaintiff Powell's defamation claim against defendant NEED is ALLOWED TO PROCEED.

4) Plaintiff Rodgers's ADEA, gender discrimination, and NCEEPA claims are DISMISSED WITH PREJUDICE. Where no claims asserted by plaintiff Rodgers remain, plaintiff Rodgers is DISMISSED from the case.

5) Plaintiff Hunt's gender discrimination and FMLA claims are DISMISSED WITH PREJUDICE. Where no claims asserted by plaintiff Hunt remain, plaintiff Hunt is TERMINATED from the case.

6) Plaintiffs' motion to join Dr. Blue as a plaintiff is DENIED WITHOUT PREJUDICE.

7) Plaintiffs' motion to amend is GRANTED IN PART, where plaintiffs seek to allege additional facts in support of claims allowed to proceed, but it is DENIED in

56

remaining part.  Within **7 days** of this order, plaintiffs are DIRECTED to file their second amended complaint, devoid of any claims dismissed by the court.

8)    The parties' Rule 26(f) conference must occur on or before **21 days** from entry of this order.  The Rule 26(f) report and plan shall be filed with the court within **14 days** after the parties' Rule 26(f) conference.

SO ORDERED, this the 18th day of September, 2020.


                                        _____
                                        LOUISE W. FLANAGAN
                                        United States District Judge